**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**MARIE CAFFEY**                                                                                   **PLAINTIFF**

**v.**                            **CASE NO. 4:05-CV-01124 GTE**

**CHRIS MILLER, Individually and in his Official
Capacity, as a Deputy and Agent of the WOODRUFF
COUNTY SHERIFF DEPARTMENT; DARLA
THOMPSON, Individually and in her Official Capacity,
as an Investigator on the Behalf of the ARKANSAS
STATE POLICE**                                             **DEFENDANTS**

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Presently before the Court are Separate Defendant Darla Thompson's Motion for Summary Judgment and Separate Defendant Chris Miller's Motion for Summary Judgment. On October 15, 2007, the Court granted Plaintiff up to and including October 18, 2007, to file her responses to Defendants' motions. To date, Plaintiff has failed to file a response to Defendant Miller's motion. However, it appears that Plaintiff intends to address Defendant Miller's motion in her response to Defendant Thompson's motion. Plaintiff filed her untimely response to Defendant Thompson's motion on October 19, 2007. The response was not only untimely, but Plaintiff failed to comply with Court's instructions in its Scheduling Order regarding the format of summary judgment responses and Local Rule 56.1(b). Pursuant to Local Rule 56.1(c), "[a]ll material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Because Plaintiff

1

failed to controvert the statements filed by Defendants Thompson and Miller, those facts are deemed admitted.

## I. Background

Defendant Thompson has been employed as an investigator in the Crimes Against Children Division of the Arkansas State Police since approximately September 16, 2002.[1] Her duties include investigating reports of child abuse that are made by telephone to the Child Abuse Hotline operated by the Arkansas State Police.[2] Defendant Chris Miller was a Deputy Sheriff for Woodruff County at the time of the events that give rise to this cause of action.

On or about September 30, 2002, Thompson's supervisor informed her that the hotline had received a report that a child had been abused in Woodruff County, Arkansas, and assigned the investigation to her.[3] Thompson telephoned Woodruff County Deputy Sheriff Chris Miller, who told her that on September 29, 2002, a boy named R.L. had been brought to the Woodruff County Sheriff's Department with deep red marks and bruises on his back.[4] Deputy Miller informed Thompson that R.L. told him that his foster mother, Marie Caffey, had whipped him with a belt because he would not eat his food.[5] This was the first time Thompson had ever

---

[1] Thompson Decl. p. 1, Defendant Thompson's Motion for Summary Judgment ("Thompson's Motion").

[2] Thompson Decl. p. 1, Thompson's Motion.

[3] Thompson Decl. p. 1, Thompson's Motion.

[4] Thompson Decl. p. 1, Thompson's Motion; Statement of Material Facts p.1, Defendant Miller's Motion for Summary Judgment ("Miller's Motion").

[5] Thompson Decl. p. 1, Thompson's Motion.

spoken with Deputy Miller.[6] She did not learn that Deputy Miller had ever run for Sheriff until after her investigation concerning R.L. was completed.[7]

On October 1, 2002, Thompson spoke with Jimmy Wilson, a manager at Senior Services, Inc., a therapeutic placement provider for children.[8] Mr. Wilson informed Thompson that he had seen R.L. on the same day after he had been found after having run away, that R.L. had "horrible" bruises, and that they had been caused by abuse.[9] Mr. Wilson also informed Thompson that R.L. had been taken to Children's Hospital in Little Rock, Arkansas, on the day he was found.[10]

On October 2, 2002, Thompson met with Kevin Schuster, a caseworker employed by the Arkansas Department of Human Services ("DHS").[11] Mr. Schuster informed Thompson that on September 29, 2002, he received a call regarding R.L. from the Woodruff County Sheriff's Department, went there, and saw marks on R.L.'s body.[12] That same day, Thompson faxed a letter to Children's Hospital requesting a copy of R.L.'s medical records and photographs of him.[13] Subsequently, Thompson received the requested documents, which indicated that R.L. had

---

[6] Thompson Decl. p. 1, Thompson's Motion.

[7] Thompson Decl. p. 1, Thompson's Motion.

[8] Thompson Decl. p. 1, Thompson's Motion.

[9] Thompson Decl. p. 1-2, Thompson's Motion.

[10] Thompson Decl. p. 2, Thompson's Motion.

[11] Thompson Decl. p. 2, Thompson's Motion.

[12] Thompson Decl. p. 2, Thompson's Motion.

[13] Thompson Decl. p. 2, Thompson's Motion; Exhibit 1, Letter to ACH, Thompson's Motion.

injuries that were one to two days old and consistent with his claim that Marie Caffey had whipped him with a belt.[14]

On October 3, 2002, Thompson spoke with Senior Services caseworker Faith Hollis regarding R.L. Ms. Hollis told Thompson that on September 29, 2002, she and Naisha Jackson, a DHS caseworker, went to Woodruff County Sheriff's Department, took custody of R.L., and saw bruises on his back.[15] According to Ms. Hollis, R.L. explained the bruises by stating that Marie Caffey, his foster mother, had whipped him with a belt.[16] Ms. Hollis reported that she took R.L. to Children's Hospital, where it was concluded that R.L. had been the victim of physical abuse.[17] Ms. Hollis also reported that R.L. had been placed in Riverdale Behavioral Services ("Riverdale") in Benton, Arkansas, but would be released to another foster home.[18]

Thompson also spoke with Naisha Jackson on October 3, 2002, who confirmed what Ms. Hollis reported.[19] She stated that R.L. reported that Marie Caffey whipped him with a belt because he would not eat his breakfast.[20] Jackson also stated that she would send photographs

---

[14] Thompson Decl. p. 2, Thompson's Motion; Exhibit 2, Medical Records, Thompson's Motion.

[15] Thompson Decl. p. 3, Thompson's Motion.

[16] Thompson Decl. p. 3, Thompson's Motion.

[17] Thompson Decl. p. 3, Thompson's Motion.

[18] Thompson Decl. p. 3, Thompson's Motion.

[19] Thompson Decl. p. 3, Thompson's Motion.

[20] Thompson Decl. p. 3, Thompson's Motion.

she had taken on September 29, 2002, of R.L.'s injuries to Thompson, which she did.[21]  Also, on October 3, 2002, Christina Kellar, a therapist at Riverdale, told Thompson that R.L. reported that he would not eat all of his eggs and his foster mother, Marie Caffey, started hitting him, so he ran out into the front yard where she began hitting R.L. with a belt before he ran away.[22]

On October 4, 2002, Thompson interviewed R.L. at Riverdale.[23]  R.L. told Thompson that Marie Caffey, his foster mother, whipped him with a belt because he had not eaten all of his food, so he ran away.[24]  Thompson observed injuries to R.L. that were consistent with his statements and took photographs of R.L.'s injuries.[25]

On October 7, 2002, Deputy Miller and Thompson went to Marie Caffey's residence and interviewed her.[26]  Ms. Caffey denied knowledge of how R.L. had been injured and denied whipping him, but admitted that he had not eaten his breakfast and that she had been the only adult with access to him on September 29, 2002, before he ran away.[27]

That same day, Thompson received a copy of an incident report from Senior Services Stepping Stones Program indicating that R.L. had run away from Marie Caffey's home at

---

[21]Thompson Decl. p. 3, Thompson's Motion; Exhibit 3, Jackson Photographs, Thompson's Motion.

[22]Thompson Decl. p. 4, Thompson's Motion.

[23]Thompson Decl. p. 4, Thompson's Motion.

[24]Thompson Decl. p. 4, Thompson's Motion.

[25]Thompson Decl. p. 4, Thompson's Motion; Exhibit 4, Thompson Photographs, Thompson's Motion.

[26]Thompson Decl. p. 4, Thompson's Motion; Statement of Material Facts p.1, Miller's Motion.

[27]Thompson Decl. p. 4, Thompson's Motion.

approximately 10:00 a.m. on September 29, 2002.[28] The report also stated that Ms. Caffey did not report that he had run away until 12:30 p.m. that same day and that R.L. was found in the woods wearing a t-shirt and underwear.[29] The report further stated that R.L. was taken to law-enforcement authorities who would not release him to Ms. Caffey, but released him to Faith Hollis and Naisha Jackson.[30] R.L. was taken to Arkansas Children's Hospital, and upon examination, it was concluded that R.L. had been physically abused.[31]

On October 8, 2002, Thompson received a copy of the DHS Incident Report from Ms. Jackson.[32] The report indicated that R.L. had been found in the woods, was being held at the Woodruff County Sheriff's Department, and had told Deputy Miller that he had run away from his foster home because his foster mother had whipped him with a belt.[33] It also indicated that R.L. had several fresh red bruises on his back and a knot on the back of his head.[34]

On October 9, 2002, Thompson contacted Arkansas State Police Trooper Paulette Ward and scheduled a polygraph examination for Ms. Caffey for October 15, 2002, which Ms. Caffey

---

[28]Thompson Decl. p. 4-5, Thompson's Motion; Exhibit 5, Stepping Stones Report, Thompson's Motion.

[29]Thompson Decl. p. 5, Thompson's Motion; Exhibit 5, Stepping Stones Report, Thompson's Motion.

[30]Thompson Decl. p. 5, Thompson's Motion; Exhibit 5, Stepping Stones Report, Thompson's Motion.

[31]Thompson Decl. p. 5, Thompson's Motion; Exhibit 5, Stepping Stones Report, Thompson's Motion.

[32]Thompson Decl. p. 5, Thompson's Motion; Exhibit 6, DHS Report, Thompson's Motion.

[33]Thompson Decl. p. 5, Thompson's Motion; Exhibit 6, DHS Report, Thompson's Motion.

[34]Thompson Decl. p. 5, Thompson's Motion; Exhibit 6, DHS Report, Thompson's Motion.

cancelled on October 11, 2002.[35] Ms. Caffey also cancelled the polygraph examination scheduled for October 22, 2002.[36]

On October 12, 2002, Thompson interviewed Jane Wright, the social worker on duty at the time R.L. was brought there on September 29, 2002.[37] Ms. Wright stated that she observed R.L.'s injuries and took photographs of them that day.[38] Thompson obtained the photographs taken by Ms. Wright, which she had previously requested in her October 2, 2002, letter.[39]

On October 14, 2002, Thompson interviewed J.S., another boy who had been living with Marie Caffey on September 29, 2002.[40] J.S. informed her that R.L. would not eat, was "talking bad" to Ms. Caffey, and was "acting terrible" that day.[41] When Thompson interviewed J.S. a second time, on October 25, 2002, J.S. told her that he was not aware of R.L. having been in a fight at school, and R.L. had only been in school for two days.[42] J.S. also told Thompson that he

---

[35] Thompson Decl. p. 6, Thompson's Motion.

[36] Thompson Decl. p. 6, Thompson's Motion.

[37] Thompson Decl. p. 6, Thompson's Motion.

[38] Thompson Decl. p. 6, Thompson's Motion; Exhibit 7, Wright Photographs, Thompson's Motion.

[39] Thompson Decl. p. 6, Thompson's Motion; Exhibit 7, Wright Photographs, Thompson's Motion.

[40] Thompson Decl. p. 6, Thompson's Motion.

[41] Thompson Decl. p. 6, Thompson's Motion.

[42] Thompson Decl. p. 7, Thompson's Motion.

did not notice any marks or bruises on R.L. on September 29, 2002, and that R.L. had not mentioned a fight to him.[43]

On October 29, 2002, Thompson spoke with Dr. John Palmer, R.L.'s treating physician at Children's Hospital on September 29, 2002.[44] Dr. Palmer stated that R.L. had been beaten and his wounds appeared to be only one or two days old.[45]

At some point during Thompson's investigation, Deputy Miller gave her photographs he had taken of R.L. on September 29, 2002 and a copy of the Woodruff County Sheriff's Department Incident Report written by him.[46] The Incident Report indicated that the paramedics that examined R.L. on September 29, 2002, after he had been found in the woods, stated that R.L.'s injuries appeared to be recent and advised that he should be taken to a hospital.[47] Deputy Miller also provided Thompson with a handwritten statement by Terrie Lewis dated September 29, 2002, which states that Ms. Lewis' son came home with a boy he had found hiding in the weeds behind Mrs. Howard's house.[48] It further states that the boy said that he ran away after being beaten for not wanting to eat, that Ms. Lewis called Mr. Byers, and they took the boy to the

---

[43]Thompson Decl. p. 7, Thompson's Motion.

[44]Thompson Decl. p. 7, Thompson's Motion.

[45]Thompson Decl. p. 7, Thompson's Motion.

[46]Thompson Decl. p. 7, Thompson's Motion; Exhibit 8, Miller Photographs, Thompson's Motion; Exhibit 9, Incident Report, Thompson's Motion.

[47]Thompson Decl. p. 7-8, Thompson's Motion; Exhibit 9, Incident Report, Thompson's Motion.

[48]Thompson Decl. p. 8, Thompson's Motion; Exhibit 10, Lewis Stmt, Thompson's Motion.

police station.[49] A statement dated September 29, 2002, by Mr. Byers was also provided by Deputy Miller to Thompson.[50] The statement confirmed Ms. Lewis' account, and added that R.L. reported that Ms. Caffey hit him over the head with a belt buckle.[51]

After completing her investigation, Thompson provided the information gathered to Deputy Miller.[52] Deputy Miller submitted an affidavit dated October 29, 2002, for Plaintiff Caffey's arrest, which stated:

> ON SUNDAY, SEPTEMBER 29, 2002, AT APPROX. 2:30PM, A 10 YEAR OLD BLACK MALE JUVENILE WAS BROUGHT TO THE SHERIFF'S DEPT. THE JUVENILE WAS FOUND IN THE WOODS WEARING ONLY A WHITE T-SHIRT AND WHITE UNDERWEAR. THE JUVENILE HAD BLOOD ON THE FRONT OF THE T-SHIRT AND SEVERAL RED SWOLLEN BRUISE MARKS ON HIS BACK AND TWO BUMPS ON HIS HEAD. THE JUVENILE ADVISED ME THAT HE HAD RUN AWAY FROM HIS FOSTER PARENT HOME. HE STATED THAT HIS FOSTER MOTHER, MARIE CAFFEY, HAD BEATEN HIM WITH A BELT ON THIS MORNING AND THEN HE RAN AWAY. I CONTACTED DHS AND THEY TOOK CUSTODY OF THE YOUNG MAN. DHS ALSO FOLLOWED UP BY TAKING THE JUVENILE TO ARKANSAS CHILDREN'S HOSPITAL FOR EXAMINATION OF HIS INJURIES. PHYSICIANS AT CHILDREN[']S HOSPITAL INDICATED TO STATE POLICE INVESTIGATORS THAT THE INJURIES TO THE JUVENILE WERE RECENT AND THE RESULT OF PHYSICAL ABUSE. MRS. MARIE CAFFEY WAS INTERVIEWED BY MYSELF AND STATE POLICE INVESTIGATOR DARLA THOMPSON AS A SUSPECT IN THIS INCIDENT. MRS. CAFFEY STATED THAT SHE DID NOT REPORT THE JUVENILE MISSING BECAUSE HE HAS A HISTORY OF RUNNING OFF AND SHE DID NOT WANT TO ALARM ANYBODY. MRS. CAFFEY SAID THAT SHE HAS NO IDEA HOW THE BRUISES WERE RECEIVED BY THE JUVENILE. MRS. CAFFEY ALSO ADMITTED THAT SHE WAS THE ONLY ADULT THAT HAD ACCESS TO THE JUVENILE ON THE DATE OF

---

[49] Thompson Decl. p. 8, Thompson's Motion; Exhibit 10, Lewis Stmt, Thompson's Motion.

[50] Thompson Decl. p. 8, Thompson's Motion; Exhibit 10, Byers Stmt, Thompson's Motion.

[51] Thompson Decl. p. 8, Thompson's Motion; Exhibit 10, Byers Stmt, Thompson's Motion.

[52] Thompson Decl. p. 8, Thompson's Motion.

THIS INCIDENT.  MRS. CAFFEY SAID THAT THE JUVENILE HAD ONLY BEEN LIVING WITH HER FOR ONE WEEK.  STATE POLICE ALSO SET UP THREE (3) DIFFERENT TIMES FOR MRS. CAFFEY TO TAKE A VOLUNTARY POLYGRAPH TEST.  MRS. CAFFEY DID NOT TAKE ANY OF THESE TEST, SHE OFFERED AS EXCUSES FOR HER NOT ATTENDING VARIOUS MEDICAL AND WORK PROBLEMS.  THE JUVENILE HAS MAINTAINED TO INVESTIGATORS, DHS STAFF AND MEDICAL STAFF ONE CONSISTENT STORY ABOUT THE BRUISES ON HIS BACK, THAT MRS. CAFFEY BEAT HIM WITH A BELT BECAUSE HE WOULD NOT EAT HIS BREAKFAST.  MRS. CAFFEY HAS BEEN INCONSISTENT IN HER STORIES RELATING TO THIS INCIDENT AND MYSELF AND STATE POLICE INVESTIGATOR DARLA THOMPSON BELIEVE MRS. CAFFEY IS RESPONSIBLE FOR THE INJURIES TO THE CHILD.  THEREFORE MRS. CAFFEY SHOULD BE CHARGED WITH BATTERY 2ND DEGREE, A CLASS D FELONY.[53]

An Arkansas Circuit Judge issued a warrant for Plaintiff's arrest.[54]  Plaintiff turned herself in to the Cotton Plant Police Department after being informed of the warrant, but was never "locked up," and was released on her own recognizance without bond.[55]  On November 5, 2002, the prosecuting attorney for the First Judicial District of Arkansas filed a felony information charging the Plaintiff with second degree battery, a class D felony.[56]  Plaintiff stood trial on or about July 30-31, 2003, and a mistrial was declared when the jury was unable to reach a verdict.[57]

---

[53]Statement of Material Facts p.2, Miller's Motion; Exhibit A, Affidavit for Warrant, Thompson's Motion.

[54]Statement of Material Facts p.1, Miller's Motion; Exhibit B, Arrest Warrant, Thompson's Motion.

[55]Caffey Dep. p. 44-45, Thompson's Motion; Statement of Material Facts p.2, Miller's Motion.

[56]Exhibit C, Felony Information, Thompson's Motion.

[57]Exhibit D, Criminal Docket, Thompson's Motion.

On August 17, 2005, Plaintiff filed her Complaint in this Court. On October 15, 2007, Plaintiff filed her Amended Complaint. Plaintiff alleges that Defendants caused her to be subject to an unconstitutional arrest for child abuse and other deprivations of constitutional rights because, *inter alia*, Plaintiff did not support Defendant Chris Miller in his campaign for Woodruff County Sheriff in November 2000. The Complaint seeks injunctive relief[58] and damages.

## II.     Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a

---

[58] The parties have failed to specifically address the request that Plaintiff's name be removed from the State of Arkansas Child Abuse System. The Court notes that Plaintiff originally brought this action prior to her trial for the alleged battery of R.L. Therefore, it is very possible that this issue is moot, as Plaintiff was not convicted of the offense. Additionally, it is not clear to the Court that these are the appropriate parties and the appropriate forum to address this issue.

> genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)) (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III.   Motions for Summary Judgment

####   A.   Official Capacity Claims

Defendant Thompson argues Plaintiff's prayer for money damages against her in her official capacity is barred by sovereign immunity under the Eleventh Amendment. *See, e.g.*, *Thomas v. Gunter*, 32 F.3d 1258, 1261 (8th Cir. 1994). Additionally, Defendant argues that the United States Supreme Court has held that 42 U.S.C. § 1983 precludes suits for damages against a public official in her official capacity. *See, e.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 & n.10 (1989) (stating that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). The Court agrees. Therefore, summary judgment is granted as to Plaintiff's claim for damages against Defendant Thompson in her official capacity.

As to Plaintiff's claim against Defendant Miller in his official capacity, the claim against Defendant Miller in his official capacity is essentially a claim against Woodruff County. *See Liebe v. Norton,* 157 F.3d 574, 578-79 (8th Cir. 1998); *Marley v. Crawford County, Arkansas*, 383 F. Supp. 2d 1129, 1132 (W.D. Ark. 2005). In order to hold a Woodruff County liable under section 1983, a plaintiff must establish that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's officers],"or that a "constitutional deprivation [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Marchant v. City of Little Rock, Ark.*, 741 F.2d 201, 204 (8th Cir. 1984) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611 (1978)). Plaintiff has made no such allegation in her Complaint.

Plaintiff failed to address this argument. The Court finds that summary judgment is proper as to Plaintiff's claims against Defendant Miller in his official capacity.

### B.     Individual Capacity Claims

Defendants Thompson and Miller assert that they are entitled to qualified immunity in their individual capacity as to Plaintiff's § 1983 claim. Qualified immunity is a question of law. *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007). "Whether an official is entitled to qualified immunity depends upon the objective legal reasonableness of the official's actions assessed in light of the legal rules that were clearly established at the time of the actions in question. *Id*. (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted). Qualified immunity shields defendants "[f]rom liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marley*, 383 F. Supp. 2d at 1131-32 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right." *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999).

Plaintiff asserts that Defendants did not have probable cause to arrest her and that they conspired to violate her civil rights by basing their investigation on the statements of a nine (9) year old as opposed to the information readily available at DHS. However, Defendants argue that "[a]n arrest executed pursuant to a facially valid warrant generally does not give rise to a

14

cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 568 (8th Cir. 1988). Additionally, "an officer requesting an arrest warrant will be shielded by qualified immunity for that function unless judged on an objective basis, 'no officer of reasonable competence would have requested the warrant.'" *Myers v. Morris*, 810 F.2d 1437, 1455 (8th Cir. 1987) (overruled on other grounds) (citing *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986)). Furthermore, the Eighth Circuit held in *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996), that officers were not liable for false arrest where they arrested the plaintiff without a warrant for the attempted kidnaping based on a nine-year old victim's story, even though the plaintiff denied the alleged incident and the officers did not investigate his alibi before arresting him. The Court notes that to the extent that Plaintiff's Complaint alleges malicious prosecution as a basis for liability under 42 U.S.C. § 1983, "[i]t is well established in this circuit that an action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000).

    Here, the Court is not resolving the factual issue of whether Plaintiff abused the nine-year-old boy, but whether Defendants had reasonable cause to believe that she did. The warrant for Plaintiff's arrest in this case was facially valid. Furthermore, qualified immunity applies in this case because the Court cannot say that, on an objective basis, no officer of reasonable competence would have requested the warrant considering the information gathered by Defendants Thompson and Miller. The Court notes that to the extent that Plaintiff responded to Defendants' motions, Plaintiff failed to controvert any relevant facts alleged in Thompson's declaration.

Plaintiff has made unsubstantiated arguments that Deputy Miller's conduct was motivated by malice or bad faith stemming from Plaintiff's failure to support Deputy Miller in a 2000 election for sheriff. Deputy Miller asserts that he did not run for sheriff in 2000, but ran in 2002. Apart from the Plaintiff's failure to produce any evidence supporting this claim, the Supreme Court abrogated the subjective component of qualified immunity in *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See, e.g.*, *Robinette v. Jones*, 476 F.3d 585, 592 n.7 (8th Cir. 2007). Therefore, Defendants Thompson and Miller are entitled to qualified immunity on the individual capacity claims, and summary judgment is appropriate.

The Court also notes Defendant Thompson's argument that Plaintiff's false arrest and malicious prosecution claims against her should fail because Defendant Thompson did not seek or obtain the warrant for Plaintiff's arrest and she did not have the authority to charge or prosecute the Plaintiff. Even if Defendant Thompson had sought and obtained the warrant and could be held liable for malicious prosecution, Defendant Thompson is entitled to qualified immunity for the reasons stated above. Additionally, the Court notes that from the undisputed account of Defendant Thompson's investigation, the investigation was thorough and competent.

Also, it appears that Plaintiff has abandoned her Voting Rights Act, equal protection, and due process claims. She states in her response to Defendant Thompson's Motion for Summary Judgment that she does not have to establish each of these claims to prevail under 42 U.S.C. § 1983 and 1985. Therefore, the Court need not address Defendants' arguments as to each of these claims.

Accordingly,

IT IS HEREBY ORDERED THAT Separate Defendant Darla Thompson's Motion for Summary Judgment (Docket No. 36) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Separate Defendant Chris Miller's Motion for Summary Judgment (Docket No. 38) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Separate Defendant Darla Thompson's Second Motion for Summary Judgment (Docket No. 50) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Separate Defendant Chris Miller's Motion to Compel (Docket No. 31) be, and it is hereby, DENIED as moot.

IT IS FURTHER ORDERED THAT Plaintiff's Complaint be, and it is hereby, DISMISSED with prejudice.

IT IS SO ORDERED this 24th day of October, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE